IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

AUSTIN BAILEY, and,
CYNTHIA BAILEY,

                              Plaintiffs,

v.                                      CIVIL ACTION NO.   2:14-cv-26820

CMH HOMES, INC., et al.,

                              Defendants.

**MEMORANDUM OPINION AND ORDER**

Pending before the Court is the Plaintiffs' motion to remand [ECF 10].   For the reasons stated below, the Court **FINDS** that that joinder of non-diverse defendants was not fraudulent and that the Court therefore lacks subject matter jurisdiction, **GRANTS** the motion to remand, and **REMANDS** this action to the Circuit Court of Mingo County, West Virginia.

**I. BACKGROUND**

In the spring of 2006, the Plaintiffs purchased a mobile home for $99,650. Unbeknownst to the Plaintiffs, it was valued at $63,000.   The Plaintiffs allege that the lender and servicer of the Plaintiffs' loan and the lender's affiliate seller deliberately misled the Plaintiffs in order to induce them to pay an inflated price for the mobile home.   After the Plaintiffs entered into the loan, the seller allegedly failed to properly set up the home, causing significant structural and interior damage to the home.   The lender allegedly proceeded to

engage in abusive loan servicing, including contacting parties not privy to the account in an attempt to collect on the debt and referring the Plaintiffs to foreclosure.   The Plaintiffs bring this action to save their home and for other relief.

Plaintiffs filed suit in the Circuit Court of Mingo County, West Virginia, bringing claims under West Virginia law for unconscionable inducement, fraud, illegal charges, breach of contract, failure to provide written receipt of payment, unreasonable publication of debt, abusive debt collection, and misrepresentation in debt collection.   The Complaint names four defendants:   Vanderbilt Mortgage and Finance, Inc. ("Vanderbilt"), the lender and servicer of the Plaintiffs' loan; CMH Homes, Inc. ("CMH"), an affiliate of Vanderbilt and the seller for the home sale transaction; Prestige Title Company, LLC ("Prestige"), the settlement agent for the transaction, to whom the Plaintiffs paid $370 in services in connection with the closing, *see* Settlement Statement Ex. 7, at 2, ECF 1-7; and Russell Williams ("Mr. Williams"), Prestige's principal.

Although the Plaintiffs and Defendants Prestige and Mr. Williams (the "In-State Defendants") are citizens of the same state for diversity purposes,[1] Defendants Vanderbilt and CMH ("the Out-of-State Defendants") removed the case to this Court pursuant to 28 U.S.C. §§ 1441 and 1446, invoking diversity jurisdiction under 28 U.S.C. § 1332.   The notice of removal alleges that the In-State Defendants were fraudulently joined and that their citizenship should be disregarded for diversity purposes.   The Plaintiffs moved to remand this case to the Circuit Court of Mingo County, West Virginia, arguing that the In-State Defendants were not

---

1 The Plaintiffs are residents of West Virginia.   Vanderbilt and CMH are Tennessee corporations with their principal place of business in Tennessee.   However, Prestige is a limited liability company whose sole member is Mr. Williams, who, like the Plaintiffs, is a resident of West Virginia.   *See* W. Va. Sec'y of State Bus. Org. Detail for Prestige Title Co. LLC Ex. 6, at 2, ECF No. 1-6; Notice of Removal 3–4, ECF 1; Compl. 1–2, ECF 1-1.

fraudulently joined.   As a further ground for remand, the Plaintiffs argue that, because the In-State Defendants have not consented to removal, the Out-of-State Defendants failed to satisfy the rule of unanimity.

## II. LEGAL STANDARD

### A.   Fraudulent Joinder

A civil action may be removed to federal court if it is within the federal court's original jurisdiction.   28 U.S.C. § 1441(a).   Federal courts have original jurisdiction over civil actions in which there is diversity among the parties and the amount in controversy exceeds the jurisdictional threshold.   28 U.S.C. § 1332(a).   Diversity of citizenship among the parties must be complete, *i.e.*, there must be no plaintiff and no defendant who are citizens of the same state. *Wis. Dep't of Corr. v. Schacht*, 524 U.S. 381, 388 (1998) (citing *Carden v. Arkoma Assocs.*, 494 U.S. 185, 187 (1990); *Strawbridge v. Curtiss*, 7 U.S. (3 Cranch) 267 (1806)).

The doctrine of fraudulent joinder permits a district court to "disregard, for jurisdictional purposes, the citizenship of certain nondiverse defendants, assume jurisdiction over a case, dismiss the nondiverse defendants, and thereby retain jurisdiction."   *Mayes v. Rapoport*, 198 F.3d 457, 461 (4th Cir. 1999) (citation omitted).   To establish fraudulent joinder, "the removing party must establish either:   [t]hat there is no *possibility* that the plaintiff would be able to establish a cause of action against the in-state defendant in state court; or [t]hat there has been outright fraud in the plaintiff's pleading of jurisdictional facts."   *Id.* at 464 (quoting *Marshall v. Manville Sales Corp.*, 6 F.3d 229, 232 (4th Cir. 1993)).   "The burden on the defendant claiming fraudulent joinder is heavy:   the defendant must show that the plaintiff cannot establish a claim against the nondiverse defendant even after resolving all issues of fact and law in the plaintiff's

favor." *Id.* (quoting *Marshall*, 6 F.3d at 232–33).   *See also Fields v. Pool Offshore, Inc.*, 182 F.3d 353, 356 (5th Cir. 1999) (any ambiguities in the current controlling substantive law must be resolved in the plaintiff's favor).   This standard "is even more favorable to the plaintiff than the standard for ruling on a motion to dismiss under Fed. R. Civ. P. 12(b)(6)."   *Hartley v. CSX Transp., Inc.*, 187 F.3d 422, 424 (4th Cir. 1999).   Doubts about the propriety of removal should be resolved in favor of remanding the case to state court.   *Id.* at 425 (citation omitted).   A plaintiff only needs to show "a possibility of a right to relief," *Marshall*, 6 F.3d at 233; if a court identifies a "glimmer of hope" for the plaintiff, then the fraudulent joinder inquiry ends and the case must be remanded, *Hartley*, 187 F.3d at 425.   In determining "whether an attempted joinder is fraudulent, the court is not bound by the allegations of the pleadings, but may instead 'consider the entire record, and determine the basis of joinder by any means available.'" *Mayes*, 198 F.3d at 464 (citation omitted).

### B. Rule of Unanimity

A party that seeks to remove an action from state court to federal court must abide by the procedural requirements set out in 28 U.S.C. § 1446, which requires that all defendants unanimously join in or consent to removal within 30 days of receiving service of the complaint. "What has been referred to as 'the rule of unanimity' requires, ordinarily, that all defendants join in, or consent to, removal."   *Wolfe v. Green*, 660 F. Supp. 2d 738, 744 (S.D. W. Va. 2009).   If the rule of unanimity is not met, the case must be remanded if a timely objection is filed. *Barbour v. Int'l Union*, 640 F.3d 599, 617 (4th Cir. 2011); *Payne ex rel. Estate of Calzada v. Brake*, 439 F.3d 198, 203 (4th Cir. 2006).

However, two relevant exceptions to the rule of unanimity exist. First, only the defendants served at the time of removal need join in or consent to removal, *Wolfe*, 660 F. Supp. 2d at 744, although any later-served defendants must join in or consent to removal within thirty days of service, *Barbour*, 640 F.3d at 617. Second, the rule of unanimity does not apply to improperly or fraudulently joined parties. *Ferrell v. Fin. Am., LLC*, No. 2:10-CV-00715, 2011 WL 1259497, at *2 (S.D. W. Va. Mar. 30, 2011) (citing *Jernigan v. Ashland Oil, Inc.*, 989 F.2d 812 (5th Cir. 1993)).

### III. DISCUSSION

It is undisputed that the In-State Defendants did not consent to removal within thirty days of service. However, if the In-State Defendants were fraudulently joined, then the rule of unanimity does not require remand. Conversely, if the In-State Defendants were not fraudulently joined, then it is undisputed that the Court would lack diversity jurisdiction and that remand would be required on that basis. Therefore, the dispositive issue here is whether the In-State Defendants were or were not fraudulently joined. The Out-of-State Defendants do not allege that there was any outright fraud in the plaintiff's pleading of jurisdictional facts. Instead, they argue that there is no possibility that the Plaintiffs can establish either of the two causes of action asserted against the In-State Defendants. However, the fraudulent joinder analysis begins, and ends, with the Plaintiffs' claim that the In-State Defendants charged Plaintiffs unreasonable fees under the West Virginia Consumer Credit and Protection Act ("WVCCPA"), W. Va. Code §§ 46A–1–101, *et seq*., inasmuch as there is more than a "glimmer of hope" for that claim.

The relevant provision of the WVCCPA provides as follows:

> [A] creditor may contract for and receive the following additional charges in connection with a consumer credit sale or a consumer loan: . . .
>> (5) Reasonable closing costs with respect to a debt secured by an interest in land; and
>> (6) Documentary charge or any other similar charge for documentary services in relation to securing a title, so long as said charge is applied equally to cash customers and credit customers and there is a reasonable relationship between said charge and the benefit conferred on the customer.

W. Va. Code § 46A-3-109(a).

The Plaintiffs allege that they paid $75 for a "Settlement or Closing fee" to Prestige and that neither Mr. Williams nor any agent of Prestige appeared at the credit closing.   Compl. 5, ECF 1-1.   It also appears from the "Settlement Statement," which was signed by Prestige, that Prestige conducted the settlement.   *See* Settlement Statement Ex. 7, ECF 1-7.   The Plaintiffs assert that the $75 closing fee is not a reasonable "closing cost" for a closing which the In-State Defendants did not attend.   The Out-of-State Defendants do not seriously contest this,[2] and the Court finds that there is more than a "glimmer of hope" that the Plaintiffs can establish that the closing fee was unreasonable under the circumstances.[3]

---

[2]       The Out-of-State Defendants merely characterize the Plaintiffs' argument that the $75 fee is unreasonable as a bold assertion, without further argument on this point.   *See* Defs.' Resp. to Pls.' Mot. to Remand 4, ECF 13.

[3]       In the alternative, characterizing the $75 fee as a notary fee, Plaintiffs argue that the fee is in excess of the $2 statutory cap on notary fees that was found in W. Va. Code § 29C-4-301(b) at the time the Plaintiffs obtained their loan.   (W. Va. Code § 29C-4-301 was repealed effective July 1, 2014.)   The Plaintiffs assert that, because the Plaintiffs' mortgage loan is subject to the WVCCPA, a violation of the notary statute also constitutes a violation of the WVCCPA.

The Out-of-State Defendants contest Plaintiffs' characterization of the $75 "Settlement or Closing Fee" as a notary fee.   Indeed, the "Settlement Statement" on which the $75 fee appears also includes a line for "Notary Fees," with no amount charged on that line.   *See* Settlement Statement Ex. 7, at ¶ 1106, ECF 1-7.   However, apart from the nomenclature used in the "Settlement Statement," which does not appear to have been prepared by the Plaintiffs, the Court has before it no evidence as to the service for which the "Settlement or Closing Fee" was actually charged.   Moreover, all issues of fact must be resolved in the Plaintiffs' favor.   Therefore, the Court must resolve in the Plaintiffs' favor the issue of whether the $75 fee was in fact a notary fee.

However, the Out-of-State Defendants argue that the Plaintiffs cannot bring claims against the In-State Defendants under W. Va. Code § 46A-3-109(a) because they were not "creditors" within the meaning of that section.   The Plaintiffs do not argue that the In-State Defendants are creditors.   Instead, they argue that the In-State Defendants are brought within the purview of § 46A-3-109(a) as agents of or participants in a joint venture with the creditor, Vanderbilt.

"[T]he possibility of establishing a cause of action based on agency or joint venture exists under the WVCCPA."   *Ferrell v. Fin. Am., LLC*, No. 2:10-CV-00715, 2011 WL 1259497, at *4 (S.D. W. Va. Mar. 30, 2011).   "Agency is the fiduciary relationship that arises when one person (a 'principal') manifests assent to another person (an 'agent') that the agent shall act on the principal's behalf and subject to the principal's control, and the agent manifests assent or otherwise consents so to act."   RESTATEMENT (THIRD) OF AGENCY § 1.01 (2006).   "One of the essential elements of an agency relationship is the existence of some degree of control by the principal over the conduct and activities of the agent."   Syl. Pt. 7, *Harper v. Jackson Hewitt, Inc.*, 706 S.E.2d 63, 65 (W. Va. 2010) (citations omitted).   At the same time, "[i]t is the very essence of an agency that it shall be used for the benefit of the principal."   *Merchants' & Mfrs.' Nat'l Bank v. Ohio Valley Furniture Co.*, 50 S.E. 880, 885 (W. Va. 1905).   "[T]he question of whether an agency relationship exists is generally fact dependent."   *Id.* at 76.   "[W]here factual

---

The Out-of-State Defendants also argue that a violation of W. Va. Code § 29C-4-301(b) does not constitute a *per se* violation of the WVCCPA.   They point out that the limitation on notary fees is set forth in the Uniform Notary Act, found in Chapter 29C of the West Virginia Code, not in the WVCCPA, which is found in Chapter 46A. The Plaintiffs offer the rejoinder that if the notary fees charged at closing were in excess of the amount permitted by law, they could not have been "reasonable" closing costs under the WVCCPA.   The Plaintiffs offer a plausible interpretation of applicable law, and it appears that no West Virginia case has squarely held that that Plaintiffs' argument is foreclosed.   As any legal uncertainty must be resolved in the Plaintiffs' favor, the Court finds, in the alternative, that there is more than a "glimmer of hope" that the Plaintiffs can establish that the closing fee was an unreasonable closing cost or a documentary charge not reasonably related to the benefit conferred on the Plaintiffs based on the alleged violation of the notary statute.

7

conflict exists regarding the degree of control exercised and the nature of the relationship thereby created, jury resolution is warranted." *Thomson v. McGinnis*, 465 S.E.2d 922, 927 (W. Va. 1995). A joint venture "is an association of two or more persons to carry out a single business enterprise for profit, for which purpose they combine their property, money, effects, skill, and knowledge. It arises out of a contractual relationship between the parties. The contract may be oral or written, express or implied." Syl. Pt. 2, *Price v. Halstead*, 355 S.E.2d 380, 382 (W. Va. 1987).

The Plaintiffs point to case law to show that courts have found that WVCCPA claims may lie against settlement agents based on agency or joint venture principles. In *Greathouse v. Vanderbilt Mortg. & Fin. Inc.*, the Court, noting the existence of West Virginia case law indicating "that it is possible for non-parties to a contract to be liable for fraudulent inducement where they are acting as agents of a party," held that a document preparer was not fraudulently joined where she was involved with preparing the closing documents and conducting the closing of the loan. No. 2:11-CV-00952, 2012 WL 1424175, at *3 (S.D.W. Va. Apr. 24, 2012). In *Ferrell*, the Court held that a closing agent and appraiser were not fraudulently joined, where the plaintiff made numerous allegations in the Complaint that they had participated in a joint venture with the lender, that the appraiser had provided an inflated appraisal of the property, and that the closing agent had conducted the closing in a hurried manner, affording no meaningful opportunity for the plaintiff to understand the closing documents. 2:10-cv-00715, 2011 WL 1259497, at *3–4 (S.D. W. Va. Mar. 30, 2011); Compl. 5, *id.*, ECF 1-1. In *Short v. Wells Fargo Bank Minn.*, *N.A.*, the Court held that a defendant closing agent could be held liable under the WVCCPA where she stated in a deposition that at the closing she represents the lender and

where the plaintiff had made multiple allegations that the defendants were agents of or part of a joint venture with the lenders.   Order at 6, No. 3:04-cv-01096 (S.D. W. Va. Apr. 15, 2005).   In *Bishop v. Ocwen Loan Servicing, LLC*, the Court denied a motion to dismiss a defendant closing agent who had conducted the closing on behalf of the lender and was alleged to have engaged in the business of making mortgage loans on behalf of the lender, noting that "liability for WVCCPA claims may lie against parties who have participated in the formation of the mortgage loan."   Order Denying Mot. to Dismiss at 3, 5, No. 13-C-173 (Cir. Ct. Mercer Cnty., W. Va. Dec. 11, 2013).   In *Estep v. Option One Mortg. Corp.*, the defendant herself asserted that she was the agent of the lender, and the Court noted that "to the extent that an agent of the lender was a participant in an inducement by unconscionable conduct under [the WVCCPA], that agent can be liable as for at least or [sic] contribution as a participant, particularly when it is that agent's actions that constitute the claim of unconscionable conduct."   Order at 3–4, No. 03-C-416 (Cir. Ct. Logan Cnty., W. Va. Oct. 17, 2005).

The Out-of-State Defendants argue that such cases are distinguishable in that they involved claims that the closing agent actually assisted in unconscionably inducing the borrower into the loan for the lender's benefit, whereas here there is no evidence that the In-State Defendants acted for the Out-of-State Defendants' benefit and the Plaintiffs allege that the In-State Defendants did not even participate at the closing.   The Court agrees that such cases are potentially distinguishable on that basis.   Nevertheless, the burden to establish fraudulent joinder is on the Out-of-State Defendants, and all ambiguities in the law must be resolved in favor of the Plaintiffs.   The Court understands the Plaintiffs to be proposing, implicitly, several possible and apparently novel legal theories:   that a settlement agent's failure to participate at

the closing or to provide any independent advice to the borrower may constitute evidence that the settlement agent acted on the principal's behalf and subject to the principal's control; that such conduct may constitute evidence of an agreement, express or implied, to carry on a single business enterprise for profit; or that such conduct may constitute assisting in unconscionably inducing the borrower into the loan for the lender's benefit.   The Court expresses no view as to the propriety or ultimate success of such theories.   However, the Court finds that the Plaintiffs have at least a "glimmer of hope" of succeeding on such theories.   Perhaps most importantly, while the Out-of-State Defendants have attempted to distinguish the cases cited by the Plaintiffs, they have not shown that such theories would be clearly foreclosed by existing law.   In the posture of fraudulent joinder analysis, ambiguity in the law favors the Plaintiffs.   *See Hartley*, 187 F.3d at 424 ("[A] truly 'novel' issue . . . cannot be the basis for finding fraudulent joinder."). As it appears that no West Virginia case has squarely held that that Plaintiffs' theories are foreclosed, the legal uncertainty must be resolved in the Plaintiffs' favor.

The Court concludes that there is more than a "glimmer of hope" for Plaintiffs' unreasonable fees claim.   Having so determined, the Court need not consider the parties' arguments respecting the remaining count asserted against the In-State Defendants.

10

## IV. COSTS

The Plaintiffs assert that they should be awarded reasonable costs and fees.

"An order remanding [a] case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal." 28 U.S.C. § 1447(c). "The appropriate test for awarding fees under § 1447(c) should recognize the desire to deter removals sought for the purpose of prolonging litigation and imposing costs on the opposing party, while not undermining Congress' basic decision to afford defendants a right to remove as a general matter, when the statutory criteria are satisfied." *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 140 (2005). "[T]he standard for awarding fees should turn on the reasonableness of the removal. Absent unusual circumstances, courts may award attorney's fees under § 1447(c) only where the removing party lacked an objectively reasonable basis for seeking removal. Conversely, when an objectively reasonable basis exists, fees should be denied." *Id.* at 141.

In support of their request, the Plaintiffs assert that the Out-of-State Defendants have demonstrated a pattern of improvident removal, having been remanded previously under identical circumstances. As noted *supra* Section III.A.1, there is an objective basis for arguing that the cases cited by the Plaintiffs are distinguishable. The Court cannot conclude that the Out-of-State Defendants' removal was unreasonable. Accordingly, the Plaintiffs' request for costs and expenses, including attorney fees, incurred as a result of removal, is **DENIED**.

11

## V. CONCLUSION

For the reasons discussed above, the Court **GRANTS** the Plaintiffs' motion to remand [ECF 10].    It is **ORDERED** that this case shall be **REMANDED** to the Circuit Court of Mingo County, West Virginia.

**IT IS SO ORDERED**.

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party.

ENTER:        September 11, 2015

THOMAS E. JOHNSTON
UNITED STATES DISTRICT JUDGE